IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:15-CV-110-FL

| | |
|---|---|
| DAVID C. DRUMMOND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| RAY MABUS, Secretary of the U.S. ) | |
| Department of the Navy, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion to dismiss, or in the alternative for summary judgment (DE 16). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Kimberly A. Swank entered a memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motion to dismiss be granted in part and denied in part, and that the court deny defendant's alternative motion for summary judgment. Both parties have filed objections. For the following reasons, the court adopts in part and rejects in part the recommendation of the magistrate judge. The court grants defendant's motion to dismiss as to plaintiff's retaliation claim, and grants defendant's motion for summary judgment as to plaintiff's remaining claim.

**STATEMENT OF THE CASE**

Plaintiff filed complaint pro se, as amended July 22, 2015, alleging that defendant, plaintiff's present employer, discriminated against him on the basis of race (black) and sex (male), as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., in connection with plaintiff's application for a promotion for which he was non-selected on

December 10, 2010.  Plaintiff seeks relief from defendant including promotion, back pay, and compensatory damages.  Defendant filed the instant motion to dismiss, or in the alternative for summary judgment, on November 30, 2015.  In support of the motion for summary judgment, defendant attaches declarations of George Dixon and Sheila Cuthbertson, individuals who reviewed plaintiff's resume for purposes of the application for promotion (DE 17-1, 17-2). Defendant also relies upon excerpts of an administrative record of proceedings before defendant and the United States Equal Employment Opportunity Commission (EEOC) pertaining to plaintiff's claim of discrimination (DE 18) (hereinafter "administrative record" or "AR").

Upon filing of the instant motion, the court stayed further case scheduling activities until resolution of the motion.  The court also notified plaintiff of the right to respond to the instant motion, and of the requirements for any response in accordance with Federal Rule of Civil Procedure 56.

Plaintiff responded in opposition to the instant motion on December 28, 2015.  In his response to the motion, plaintiff relies upon an appendix of documents including (1) excerpts of documents from the administrative record (DE 22-2, 22-3, 22-4, 22-5); (2) a document titled "Delegated Examining Operations Handbook: A Guide for Federal Agency Examining Offices, May 2007" (DE 22-6); (3) an email from Cecil B. Brown, HR Specialist, dated May 29, 2007, regarding "Workload Review of Industrial Engineering Technicians (IET)" (DE 22-7); (4) an EEOC guidance document titled "Best Practices for Employers and Human Resources/EEO Professionals" (DE 22-8); (5) an email chain between plaintiff and Stanley Bradly, dated June 30, 2011, regarding the administrative file (DE 22-9); (6) a November 23, 2015, order granting motion for sanctions in an

2

EEOC proceeding involving plaintiff and defendant (DE 22-10); and (7) a document entitled "On Board Analysis by Series" (DE 22-11).

In a surreply filed February 8, 2016, plaintiff relies upon a further appendix of documents in opposition to summary judgment, including: (1) additional excerpts of documents from the administrative record (DE 26-2, 26-3, 26-4, 26-5, 26-7, 26-8, 26-9, 26-10, 26-11); (2) an email chain between plaintiff and Cecil B. Brown, HR Specialist, concluding January 18, 2011, regarding "Job Analysis" (DE 26-4); and an excerpt from a Department of the Navy "Civilian Human Resources Manual" (DE 26-6). Plaintiff also relies upon documents attached to the amended complaint, including his administrative request for reconsideration (DE 6-5) and administrative claim documents (DE 6-9).

Finally, in objections to the M&R, plaintiff attaches, in addition to the foregoing, an April 29, 2016, order of default judgment in an EEOC proceeding involving plaintiff and defendant (DE 31-1); and an excerpt from a United States Office of Personnel Management (OPM) document titled "Investigations FAQs – Suitability Adjudications." (DE 31-3).

**STATEMENT OF THE FACTS**

The facts viewed in the light most favorable to the plaintiff may be summarized as follows for purposes of providing context to plaintiff's claims. Additional facts are discussed, as needed, throughout this order.

In 2010, plaintiff was employed as an Industrial Engineering Technician, GS-0895-09, at a Department of the Navy (the "agency") facility in Cherry Point, North Carolina. On July 29, 2010, the agency announced a vacancy in its industrial production planning division, for a position titled Industrial Engineering Technician, at grade "GS-0895-09 KPP GS-0895-11" (the "promotion

3

position"). (AR 352).[1] The vacancy announcement for the promotion position included an explanatory note that the "Incumbent must complete a Shop Training Plan and have a minimum of one year in the position prior to being considered for promotion to the GS-0895-11 level." (Id.) The vacancy announcement further stated that "[i]nterested employees may apply for this position under the continuous Announcement No. DON0895," and it directed applicants to update their resume by using an agency website link. The promotion position was created to replace a position previously occupied by Tammy G. Daniels ("Daniels"). (AR 194).

The agency's continuous announcement number DON0895 described a range of positions denominated Industrial Engineering Technician, covering grades "GS-0895 -07, 08, 09, 10, 11, 12," and salary range from "$17,174 - $97,658 per annum," in fifteen agency locations nationwide, including Cherry Point, North Carolina. (AR 196). The continuous announcement stated that "[t]o qualify for this position, your resume must show sufficient experience and/or education, knowledge, skills, and abilities to perform the duties of the specific position for which you are being considered." (AR 197). "Eligible applicants will be evaluated based on a comparison of the position requirements against the quality and extent of the experience or related education as reflected in their resume." (Id.).

The agency's internal "position description" approved on March 31, 2010, described the promotion position as follows:

> This position is located in the Equipment Planning and Engineering Branch (6.3.1), Industrial Production Planning Division (631), Industrial Production Support Department (63), Fleet Readiness Center (FRC East), Cherry Point, North Carolina.

---

[1] Citations to the administrative record ("AR"), provide the page number indicated in bold, underlined, at the bottom center of each page of the AR, and not the page number provided by the court's CM/ECF system. The AR is filed on the court's docket in excerpt form at docket entry 18, as well as additional excerpts at docket entries 22 and 26, as noted in the statement of the case above.

4

> The incumbent performs Industrial Engineering Technician work typified by researching, planning, designing, analyzing, improving, and installing equipment to produce a product or render a service. The duties require the application of technical skills and are performed in an industrial plant. The incumbent is responsible for the planning, acquisition, and installation of plant equipment.

(AR 182). The internal position description describes selection factors, including knowledge and skills required. (AR 183-84).

An "internal certificate" for the promotion position, certificate number EAO-GS0895-09-MM823811-C-A1-82, specified David Heath ("Heath"), director of the agency's Industrial Production Planning Division, a white male, as selecting official for the position. (AR 202). The agency designated Angela K. Reed ("Reed"), a black female supervisor in the Equipment Planning and Engineering Branch (the "branch") of the Industrial Production Planning division, as "subject matter expert" for the promotion position and the "recommending official" to Heath. (AR 190, 349).

Reed designated two supervisors in the branch, George Dixon ("Dixon") and Sheila Cuthbertson ("Cuthbertson"), to "score" or "grade" resumes of applicants according to a "resume score sheet" developed by Reed prior to the posting of the vacancy announcement. (AR 208, 210, 349, 356, 361; DE 17-1, 17-2). Dixon is a white male, and Cuthbertson is a black female. (AR 356, 361). The resume score sheets required Dixon and Cuthbertson to assign points in eight functional areas, each divided into further sub-functional areas, on a scale from 0 to 5, with 0 being "no knowledge or ability demonstrated" to 5 being "strong knowledge or ability demonstrated by work performed." (E.g., AR 210-217).

Dixon and Cuthbertson reviewed and scored 14 resumes submitted in application for the promotion position, including plaintiff's resume. (AR 356, 361-62). Dixon and Cuthbertson provided the scores to Reed, who considered the average of scores by Dixon and Cuthbertson. (AR

5

209, 349-50). Plaintiff ranked 11 out of 14 resumes scored. (AR 209). In particular, the score rankings may be summarized as follows, in descending rank of scores provided, with race and sex of each applicant specified:

| Rank | Name | Cuthbertson | Dixon | Average | Race/Sex |
| --- | --- | --- | --- | --- | --- |
| 1 | Kathleen E. Hoke | 73 | 110 | 91.5 | White female |
| 2 | Timothy L. Bennett | 76 | 106 | 91 | White male |
| 3 | Tammy Daniels | 63 | 109 | 86 | White female |
| 4 | Lisa Harraden | 56 | 106 | 81 | White female |
| 5 | John Reifschneider | 49 | 108 | 78.5 | White male |
| 6 | Gary Allen | 59 | 97 | 78 | White male |
| 7 | Forrest C. Owens | 53 | 84 | 68.5 | White male |
| 8 | Kimberly A. Rice | 45 | 90 | 67.5 | White female |
| 9 | Jack C. Bradford | 42 | 85 | 63.5 | White male |
| 10 | Melody L. White | 41 | 82 | 61.5 | White female |
| 11 | David C. Drummond | 35 | 87 | 61 | Black male |
| 12 | Alexander Howard | 37 | 64 | 50.5 | Black male |
| 13 | Sonya L. Godette | 33 | 57 | 45 | Black female |
| 14 | Donald Bolton | 25 | 59 | 42 | White male |

(See AR 203, 209).

Based on the average score rankings, Reed then emailed the top four scoring candidates to see if they were still interested in the position. (AR 209, 230-233, 349). The top three candidates stated that they no longer were interested in the position. (Id.). The fourth ranked candidate, Lisa Harraden ("Harraden"), expressed continued interest. (Id.). Reed then recommended Harraden to Heath for the promotion position based on her having the highest score of the remaining candidates.

6

(AR 349). On the basis of Reed's recommendation, Heath selected Harraden for the promotion position on December 8, 2010. (AR 204-05; see AR 202-227, 349-350).

On December 22, 2010, plaintiff initiated contact with the agency's EEO office, claiming that he was non-selected for the promotion position because of his race and sex. (AR 23-24). On February 11, 2011, plaintiff filed an EEO complaint wherein he claimed that he was non-selected for the promotion because of his race and sex. (See DE 6-3 at 2-3). In the time period between March 2011 and July 2011, plaintiff attempted to amend the complaint to include claims of retaliation, contending that agency had retaliated against him by failing to amend and investigate claims submitted to the agency. (See DE 6-9 at 8-9; AR 345-46). On March 21, 2013, the agency provided plaintiff a final decision on his complaint dated February 11, 2011, deciding after investigation that plaintiff was not discriminated against as alleged. (DE 6-2 at 3; see DE 18 at 2-10). Plaintiff appealed the agency's final decision to the EEOC, which affirmed the agency's final decision on September 19, 2014 (DE 6-3 at 6). Plaintiff filed for reconsideration, and the EEOC's final decision was given March 31, 2015.

**COURT'S DISCUSSION**

A.  Standard of Review

   1.  M&R

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

2. Motion to Dismiss

To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of showing that subject matter jurisdiction is appropriate. See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. In that instance, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The standard of review, however, is the same as with a motion for summary judgment. Thus, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To meet this standard, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but

8

does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

        3.        Summary Judgment

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other discovery materials properly before the court demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to find for the non-moving party).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250. In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

9

Nevertheless, "permissible inferences must still be within the range of reasonable probability,. . .and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

  1.  Retaliation Claim

Plaintiff objects to the magistrate judge's determination that the court lacks jurisdiction to consider plaintiff's claim of retaliation asserted in his complaint because the claim is not cognizable under Title VII, and that plaintiff fails as a matter of law to state a claim. Upon de novo review of the M&R and the claim asserted, the court adopts and incorporates herein the analysis in the M&R. (DE 28 at 4-6). In addition, dismissal of plaintiff's claim of retaliation as stated in the amended complaint is warranted because plaintiff has not exhausted administrative remedies for the claim. See Evans v. Technologies Applications and Serv. Co., 80 F.3d 954, 962-63 (4th Cir. 1996). Moreover, plaintiff's assertions that defendant failed to develop fairly the investigative record, process amendments, and include in the record findings of a "spin-off investigation," (DE 6 ¶ 7), do not state a valid claim for relief under Title VII. See Terry v. EEOC, 21 F. Supp. 2d 566, 569 (E.D. Va. 1998); see also Jordan v. Summers, 205 F.3d 337, 342 (7th Cir. 2000).

10

In sum, defendant's motion to dismiss plaintiff's retaliation claim is granted. Plaintiff's claim based upon retaliation is dismissed for lack of subject matter jurisdiction and for failure to state a claim.

2. Sex and Race Discrimination Claim

Defendant objects to the magistrate judge's recommendation to deny without prejudice defendant's motion for summary judgment as "premature." (DE 28 at 8). Federal Rule of Civil Procedure 56 permits a party to move for summary judgment "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). The rule permits the court to defer consideration of the motion or to deny it "[i]f a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

Upon de novo review of the M&R and careful review of the parties' briefs and record, the court determines that defendant's motion for summary judgment is ripe for ruling and is not premature. The motion is based upon voluminous evidence in the administrative record bearing on plaintiff's sex and race discrimination claim. The court notified plaintiff of the right to respond to the motion, and plaintiff has done so, including with surreply, attaching additional voluminous evidence in support of his claim. Plaintiff has not shown by affidavit or declaration that, for specified reasons, he cannot present facts essential to justify his opposition. Although plaintiff suggests in his opposition brief that he would like to take "aggressive discovery," (DE 22 at 13), he has not shown specific reasons why he cannot present facts essential to justify his opposition, given the evidence already in the record and presented for and against summary judgment. Therefore, the court rejects the recommendation of the magistrate judge and proceeds to consideration of defendant's motion for summary judgment.

11

Title VII makes it unlawful for an employer to discriminate against an individual on the basis of sex or race. See 42 U.S.C. § 2000e-2(a)(1). When a plaintiff's Title VII claim is challenged on summary judgment, the plaintiff may "avert summary judgment through [one of] two avenues of proof." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) (internal alteration omitted). He may present "direct or circumstantial evidence that a raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision." Id. Alternatively, he may use the well-known "burden shifting" proof structure. Id. (internal alteration omitted). See generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff here has not presented any direct or circumstantial evidence of discrimination and, thus, must rely on the burden shifting framework.

The burden shifting proof structure proceeds in three steps. Plaintiff must first prove a prima facie case of race discrimination by showing "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). If plaintiff makes this prima facie showing, then defendant must "articulate some legitimate, nondiscriminatory reason for its action." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 278 (4th Cir. 2000) (internal quotations omitted). Defendant bears only a burden of production; the burden of proof remains with plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507–08 (1993). Thus, if defendant meets its burden of production, the burden-shifting framework "drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir.

12

1996) (internal quotations omitted). In other words, plaintiff then must show that defendant intentionally discriminated against him. Id.

Here, defendant has come forward with substantial evidence of a legitimate, non-discriminatory reason for plaintiff's non-selection for the promotion position, namely that the selectee, Harraden, was more qualified for the position. (See AR 209, 349-50).

Because defendant has satisfied its burden of production, plaintiff must prove that defendant's proffered justification "was mere pretext and that race was the real reason" plaintiff's non-selection. Hawkins, 203 F.3d at 278. Plaintiff may meet this burden "indirectly by showing that the employer's proffered explanation is unworthy of credence." Hicks, 509 U.S. at 514. However, the veracity of defendant's proffered nondiscriminatory reason must be evaluated through defendant's eyes. See Hawkins, 203 F.3d at 280. Put another way, in order to go to trial, plaintiff must supply evidence that calls the honesty of defendant's proffered justifications into question. See DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998).

Plaintiff fails to present evidence permitting an inference that Heath, Reed, Dixon, or Cuthbertson, (hereinafter, the "selecting officials"), or any other individual involved in the selection of Harraden, did not honestly believe that Harraden was better qualified than plaintiff. Indeed, the evidence in the record overwhelmingly supports the conclusion that the selecting officials believed that Harraden was more qualified than plaintiff. Such evidence includes records showing that fourteen individuals applied for the promotion position, and that plaintiff ranked 11 out of 14 in averaged resume score, whereas Harraden ranked four out of 14 in averaged resume score. (AR 209). Not only did plaintiff score below Harraden, but also plaintiff ranked below six other individuals who also scored below Harraden. (Id.).

13

The veracity of defendant's legitimate explanation is further supported by the procedures used in this instance to evaluate applicants. The fact that Reed developed selection criteria, which criteria were applied separately by Dixon and Cuthbertson in grading the resumes, interjects into the procedure a virtually unassailable level of objectivity and independence. (See AR 349-50, 356-57, 361-62). Also notable is the fact that Reed inquired of continuing interest in the top three ranked candidates before offering the position to Harraden, further enforcing adherence by the selecting officials to the objective numerical rankings of the applicants in making their selection decision. (AR 209, 230-233, 349). Moreover, it is notable that, although Dixon and Cuthbertson scored applicants differently, their average scores placed plaintiff and the selectee in the same comparative ranking. (AR 209). In sum, the combination of all these factors makes plaintiff's claim of discrimination implausible.

Plaintiff's arguments in an attempt to show pretext are unavailing. Plaintiff suggests, for example, that the selectee, Harraden, lied on her resume in representing her on-the-job engineering and design experience. As an initial matter, plaintiff has not presented evidence permitting a reasonable inference that Harraden lied on her resume. Indeed, it is not plausible to believe that she would have or could have done so, because she worked in the same branch as Reed, Cuthbertson, and Dixon. (AR 348, 355, 360). In addition, "it is the perception of the decision maker which is relevant," Hawkins, 203 F.3d at 280, and, here, neither Reed nor Dixon nor Cuthbertson could identify any reason to disbelieve the statements on Harraden's resume. (AR 351, 358, 363). Furthermore, while plaintiff now attempts to point out inaccuracies and exaggerations in Harraden's resume, these assertions do not demonstrate that any of the selecting officials honestly believed at the time of selection that Harraden had lied on her resume, but then nonetheless proceeded to rank

14

her higher than both plaintiff and nine other individuals, in order to put a white female in the promotion position. See Dejarnette, 133 F.3d at 299 (stating that an "employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination") (citation omitted). Such an inference is implausible, given that two other white female candidates also ranked higher than plaintiff but were not selected. (See AR 209).

Plaintiff next argues that the agency did not follow correct procedures in developing the job description and selection requirements for the promotion position, and plaintiff suggests this led to an unfair advantage, preselection, or favoritism for the selectee over plaintiff. As an initial matter, plaintiff has not produced evidence permitting an inference that the agency did not follow correct procedures in developing a job description and selection requirements for the promotion position. The record reflects that the promotion position was developed through a combination of multiple layers of form documentation and review tailored to the specific needs of the vacancy. (AR 182-84, 190, 194-97, 202, 349-350, 352).

In any event, even crediting plaintiff's assertion that the agency did not correctly follow its procedures in developing the promotion position requirements, it is not the province of the court "to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's" non-selection. Hawkins, 203 F.3d at 279. Here, the agency applied the same selection criteria to fourteen applicants. (AR 209, 350). Thus, if some applicants benefitted by selection criteria improperly skewed to their advantage, the ultimate selection may be unfair or unwise, but it is not pretext for race or sex discrimination. See id.; see also Mackey v. Shalala, 360 F.3d 463, 468-69 (4th Cir. 2004) (stating that evidence that "superiors at NIH violated standard hiring procedures by preselecting [selectee] and placing him into a position that took over many of

15

[plaintiff's] duties, and then her superiors falsified records to cover their violations of hiring procedures," even if true, "is not sufficient evidence for jurors reasonably to conclude that [the agency's] explanation for [selectee's] hiring was pretext").

In his brief, plaintiff takes issue with multiple aspects of the scoring of his resume in comparison with the scoring of the selectee's resume, suggesting that if the resumes had been scored properly he would have been the top qualifying candidate. This line of argument misses the forest through the trees. This court does "not sit to appraise [the agency's] appraisal" of applicants. Hawkins, 203 F.3d at 280. Where "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff," id., plaintiff's post-hoc suggestion of correct scoring of his resume in comparison to Harraden's resume is of little relevance to show pretext.

Plaintiff suggests, nonetheless, that his actual qualifications are so much more substantial than Harraden's that pretext and discrimination should be inferred. To succeed upon such a line of argument, however, a plaintiff must show that his "qualifications were so plainly superior that the employer could not have preferred another candidate." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 648 n.4 (4th Cir. 2002). Plaintiff has failed to do so here. For example, as an illustration, plaintiff criticizes Cuthbertson's score of 4 points ("General knowledge or ability demonstrated by work performed") to Harraden in the sub-category for "5...b. Coordinate acceptance," in comparison to Cuthbertson's score of 1 point ("Little knowledge or ability demonstrated") in such sub-category to plaintiff. (AR 211, 213).

In this example, plaintiff points to two statements in his resume as supporting a higher score: "I am well versed in the Simplified Acquisition Procedures of the FAR (Federal Acquisition Regulations which govern small business acquisition procedures," and "I submit acquisition package

16

to contracting for the purchase of equipment." (DE 26 at 28; see DE 17-2 at 4). Harraden's resume, however, includes the following detailed description pertinent to equipment delivery and acceptance:

> Since February 2006, I've been the sole 615 support technician for the 930 and 960 divisions. This position required program management responsibility for the purchasing of all plant equipment from its task inception through investigation, ordering, maintaining financial records, receipt of delivery and installation. . . . I manage design reviews, final inspections and budget change orders. I coordinate execution schedules to include: facilities outages, . . . equipment pickup and delivery . . . and contractor installation of production equipment.

(AR 225). While plaintiff contends in his brief he provided more services towards ensuring equipment worked properly in his work "for the MEO servicing the entire depot," the references to "MEO" in plaintiff's resume do not demonstrate such equipment-oriented work. (See, e.g., DE 17-2 at 4, 5, and 6).

In sum, plaintiff has not demonstrated that his qualifications were so plainly superior with respect to this category, or with respect to all categories in the aggregate. The type of post-hoc analysis and resume evaluation that plaintiff would have the court undertake, sitting in the shoes of a first-reviewer of resumes in the position of Cuthbertson or Dixon, who are more familiar with the facility and the work therein, is precisely the analysis that the Fourth Circuit discourages courts to take in analyzing pretext. See Hawkins, 203 F.3d at 280.

Finally, plaintiff asserts that two additional categories of evidence, statistical evidence and statements of co-workers, support his claim. The statistical evidence plaintiff presents, however, a document entitled "On Board Analysis by Series," is without meaningful context and provides no information that permits a plausible inference of discrimination in plaintiff's non-selection for the promotion position. (See DE 22-11). Likewise, statements by plaintiff's co-workers do not suggest or imply reasonably that plaintiff's non-selection was due to race discrimination. Indeed, one states

17

that he does not believe race or sex was a factor in the selection process. (AR 388). Two others provide their opinion as to the relative qualifications of plaintiff and Harraden (AR 381, 385), which type of testimony is "close to irrelevant" as a general matter, Hawkins, 203 F.3d at 280, and not probative of pretext or discrimination under the circumstances of this case.

In sum, plaintiff fails to present or forecast evidence in opposition to defendant's motion that the agency's legitimate non-discriminatory reasons for his non-selection was pretext or that discrimination was the real reason for his non-selection. Therefore, defendant is entitled to judgment as a matter of law on plaintiff's race and sex discrimination claim.

## CONCLUSION

Based on the foregoing, the court adopts in part and rejects in part the M&R as set forth herein. The court GRANTS defendant's motion to dismiss (DE 16) plaintiff's retaliation claim, and GRANTS defendant's alternative motion for summary judgment (DE 16) for plaintiff's remaining claim. In particular, the court DISMISSES WITH PREJUDICE for lack of subject matter jurisdiction and for failure to state a claim plaintiff's retaliation claim. The court GRANTS summary judgment for defendant on plaintiff's claim for race and sex discrimination. The clerk is DIRECTED to close this case.

SO ORDERED, this the 15th day of September, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge